# SUPREME COURT.

## John Handley agt. Peter A. L. Quick.

## John W. Maynard agt. Peter A. L. Quick.

*Jurisdiction — order for publication of summons — property in the state.*

Where considerable evidence was shown, by affidavits, to obtain an order for service of the summons by publication, that the defendant could not, after due diligence, be found within the state; and positively averred by the plaintiffs, on personal knowledge, that the defendant was a non-resident and his actual place of residence abroad was given; also averred in terms that "the defendant cannot, after due diligence, be found within this state, he now being, as deponent is informed and believes, at or near Milford, in the state of Pennsylvania aforesaid," his place of residence; also that the plaintiff's attorney stated "that he had sent to the sheriff of Orange county (which adjoins the county of the defendant's residence in Pennsylvania) a copy of the summons and complaint in this action, to be served upon said defendant, if he could be found, * * and had received a telegram from the sheriff stating that he had been unable to serve said summons;" *held*, sufficient to give the officer jurisdiction to make the order.

*Held*, that this evidence makes a stronger case than was made in *Van Wyck* agt. *Hardy*, and sustained in the court of appeals (39 *How.*, 392); and quite as strong as that which was held sufficient by the general term in *Waffle* agt. *Gable* (53 *Barb.*, 517). (*See also Smith* agt. *Matson, ante, page* 118.)

Where the plaintiff's affidavits distinctly averred, on information and belief, the existence of the fact that the defendant *had property within this state*, and then related a circumstance of which they had been informed, and the source of their information, having a tendency to prove it, but did not state whether this was all the information they had on the subject; *held*, that this was barely sufficient to enable the officer to pass upon the question. It is doubtless true that this is a fact, the actual existence of which is essential to the jurisdiction of the court.

On a subsequent motion by the defendant (at the same special term), on new affidavits to set aside the orders of publication, on the ground that the defendant in fact had no property in the state when the orders were

Handley agt. Quick.

granted; *held*, after a careful examination of voluminous affidavits on both sides, that the court was decidedly impressed that the proceedings of the defendant from the outset, in regard to the property in question, had been taken in bad faith, merely to avoid the payment of his indebtedness to the plaintiffs.  Motion denied with costs.

*Broome Special Term, January* 13, 1874.

MOTIONS to set aside orders granted by the county judge of Chemung county, directing the service of the summons in each action by publication, on the ground that the affidavits were insufficient to warrant the same.  The affidavits were precisely alike in each case, so far as the questions involved in these motions are concerned.  The plaintiff in each case deposed " that said defendant is not a resident of this state, but resides near the village of Milford, in the county of Pike and state of Pennsylvania; that the post-office address of said defendant is Milford, Pike county, Pennsylvania; that deponent has addressed letters to and received answers from said defendant, respectively addressed to and post-marked at said Milford; that said defendant cannot, after due diligence, be found within this state, he now being, as deponent is informed and believes, at or near Milford aforesaid, which deponent knows to be the place of residence of said defendant; that said defendant has, as deponent is informed and believes, property within this state, to wit, certain money deposited in certain banks in the village of Port Jervis, in the county of Orange; that, on the twenty-sixth day of June last, deponent procured from the county judge of Chemung county an order of attachment in this action against the said defendant, and has been shown by George M. Diven, deponent's attorney in this action, a letter from Charles H. Wygant, sheriff of Orange county, dated the twenty-seventh day of June last, stating that he had on that day attached $13,000 in the First National Bank of Port Jervis and $15,000 in the National Bank of Port Jervis, under the aforesaid attachment against said Peter A. L. Quick."  The attorney, Mr. Diven, also deposed "that he had sent to said

sheriff of Orange county a copy of the summons and complaint in this action, to be served upon said defendant if he could be found; that deponent has this day, in answer to a despatch sent by deponent, received a telegram from said sheriff stating that he has been unable to serve said summons; that Pike county, Pennsylvania, adjoins the county of Orange in this state." The motions are founded on two grounds: 1. That the affidavits do not show that the defendant could not, after due diligence, be found within this state. 2. That they do not show that the defendant has property within the state.

*David B. Hill*, for the motions.

*George M. Diven*, contra.

COUNTRYMAN, *J.*—After some hesitation, I have concluded to hold that the affidavits were sufficient to give the officer jurisdiction, and set forth facts enough to enable him to determine judicially whether a case existed for granting the orders of publication. It requires a very liberal indulgence to the officer in the exercise of his judgment to justify this conclusion. There ought to be a more literal compliance with the provisions of the Code in these proceedings. The affidavit should be required to state in detail the information, or the facts and circumstances, as the case may be, upon which he relies to sustain his inferences or his belief. But the general tendency of the recent decisions is to uphold the proceedings when taken in good faith, in the absence of any affirmative evidence disproving the facts alleged, if the original papers contained evidence calling for the exercise of the judgment of the officer who is required, in the first instance, to determine their sufficiency ( *Van Wyck* agt. *Hardy*, 39 *How.*, 392; *Waffle* agt. *Gable*, 53 *Barb.*, 517; *Peck* agt. *Cook*, 41 *Barb.*, 549; *Miller* agt. *Adams*, 52 *N. Y.*, 409, 410; *Steinle* agt. *Bell*, 12 *Abb.* [*N. S.*], 171; *Talcott* agt.

*Rosenburgh*, 8 *Abb.* [*N. S.*], 287). There is considerable evidence to show that the defendant could not, after due diligence, be found within the state. It is positively averred in each of the plaintiff's affidavits, on personal knowledge, that the defendant was a non-resident and his actual place of residence abroad is given. It is also averred in terms that "the defendant cannot, after due diligence, be found within this state, he *now being*, as deponent is informed and believes, at or near Milford aforesaid," his place of residence. It is then stated in the affidavit of the attorney "that he had sent to the sheriff of Orange county (which adjoins the county of the defendant's residence in Pennsylvania) a copy of the summons and complaint in this action, to be *served* upon said defendant *if he could be found*, \* \* and had received a telegram from the sheriff stating that he had been *unable* to serve said summons." I think this evidence makes a stronger case than was made in *Van Wyck* agt. *Hardy*, and sustained in the court of appeals (39 *How.*, 392); and is quite as strong as that which was held sufficient by the general term in *Waffle* agt. *Gable* (53 *Barb.*, 517). It is apparent, from the opinion of the court in *Peck* agt. *Cook* (41 *Barb.*, 549), that the decision in that case would have been the other way, if the affidavit after showing the defendant's non-residence, had not stated that "he frequently visited the county of Livingston," in this state; a fact which was held to impose on the plaintiff greater effort to find him and to require more evidence that he could not be found, than would otherwise have been necessary. However that may be, such is clearly the construction to be given to that opinion, in the light of the later decision made by the same court in the case of *Waffle* agt. *Gable* (53 *Barb.*, 517).

There is more difficulty with the other question, whether the defendant had any property within this state. It is averred in the affidavit of each plaintiff that the "defendant has, as deponent is informed and believes, property within this state, to wit, money deposited in certain banks in the

village of Port Jervis;" that the plaintiff has procured an attachment in the action against the defendant, "and has since been shown a letter from the sheriff of Orange county, dated June twenty-seventh, stating that he had on that day attached $13,000 in the First National Bank of Port Jervis and $15,000 in the National Bank of Port Jervis, under the said attachment against said Peter A. L. Quick." This, it is true, is quite inconclusive proof, but is some evidence having a tendency to prove the fact sought to be established. The affidavits distinctly aver, on information and belief, the existence of the fact, and then relate a circumstance, of which they have been informed and the source of their information, having a tendency to prove it, but do not state whether this is all the information they have on the subject. I think this was barely sufficient to enable the officer to pass upon the question; and there being evidence, which the county judge held was satisfactory to him, that the defendant had property in the state, the orders of publication should not now be set aside.· In *Evertson* agt. *Thomas* (5 *How.*, 45) there was no evidence on this point, but the bare allegation made on information and belief. It is doubtless true that this is a fact the actual existence of which is essential to the jurisdiction of the court, but this would be equally true even if the fact were positively alleged on the personal knowledge of the affiant. Such *ex parte* proof, however clear on its face, would not be conclusive; and if it should finally turn out that the affidavit was false, and the defendant in fact had no property in the state when the orders were made, the judgments would be void (*Fisk* agt. *Anderson*, 12 *Abb.*, 8). Whenever, then, a *prima facie* case on this point is established by the papers, the orders should be sustained. Even in a case of doubt, I should be disinclined to dispose of this question in this summary way. The plaintiffs have attached this property, claiming it as the property of the defendant; and if there is a reasonable ground of dispute over the question of ownership, the plaintiffs should not be deprived at

the outset, and beyond recall, of all the fruits of the litigation.   A sheriff's jury may be called if the property should be claimed by a third person, and the facts bearing on the question of title be thus ascertained ; or, in the event of the property being sold on the final judgments and executions, the claimant may test the validity of his title by a new action against the plaintiffs or against the sheriff for wrongfully seizing it.   The defendant, at least, is not particularly interested in that question, as he cannot be harmed if the property does not really belong to him.

The motions must be denied, but, under the circumstances, without costs, as the plaintiffs should receive no encouragement to continue this practice.

NOTE.—The foregoing orders were affirmed on appeal by the general term, third department, June 1874.

----

The defendant also moved separately at the same special term, on new affidavits, to set aside the orders of publication in these actions, on the ground that the defendant in fact had no property in the state when the orders were granted, and upon these motions a large number of affidavits were read *pro* and *con.* bearing on that question.

*David B. Hill,* for the motions.

*George M. Diven,* contra.

COUNTRYMAN, *J.*—I have carefully read the voluminous affidavits upon which these motions respectively are made and opposed, and the result has been a very decided impression that the proceedings of the defendant from the outset, in regard to the property in question, have been taken in bad faith merely to avoid the payment of his indebtedness to the plaintiffs.   It is quite evident that he originally deposited the money in the Port Jervis banks, in this state, in order to

Handley agt. Quick.

place it beyond the control of the courts of Pennsylvania, and I cannot resist the conclusion that his subsequent transfers (doubtless formally made precisely as he has deposed) was a fraudulent contrivance to place the property again, if possible, beyond the reach of the plaintiffs as suitors in the courts of this state. It would be a cause of deep reproach upon our methods of administering justice, if such an artifice should be permitted to succeed. But without reference to the main items of $13,000 and $15,000 respectively, for which certificates of deposit were given by the banks to the defendant, which he claims to have since transferred to his father-in-law, it now appears that there was sufficient property of the defendant in this state, the title to which is not in question, to uphold these proceedings. The sheriff swears that he also attached, in addition to the above amounts, the sum of $102.72 in money belonging to the defendant, on deposit in the First National Bank; and there is no pretense, even in the moving affidavits, that this money was not his property. These motions, therefore, must also be denied, with ten dollars costs.